```
                    United States District Court
                      District of Massachusetts
 _____
                                )
CHAD TEIXEIRA, For Himself and  )
for Others Similarly Situated,  )
                                )
         Plaintiff,             )
                                )    Civil Action No.
         v.                     )    18-11589-NMG
                                )
QUALITY BEVERAGE LIMITED        )
PARTNERSHIP,                    )
                                )
         Defendant.             )
 _____ )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiff Chad Teixeira ("Teixeira" or "plaintiff") brings this putative class action, on behalf of himself and at least 16 other similarly situated employees, against his employer, Quality Beverage Limited Partnership ("Quality Beverage" or "defendant"). Teixeira alleges that Quality Beverage improperly diverted funds to pay health insurance premiums in excess of the rate provided under a collective bargaining agreement ("the CBA") and thus owes those employees unpaid wages pursuant to M.G.L. c. 149, §§ 148 and 150. Pending before this Court is defendant's motion to dismiss on the grounds that the state law claim is preempted by Section 301 of the Labor Management Relations Act ("the LMRA"), 29 U.S.C. § 185.

## I. Background

### A. The CBA

Teixeira is a Massachusetts resident who was employed by Quality Beverage from at least September, 2014, through May, 2017. Quality Beverage is an independently-owned beer wholesaler with offices in Taunton and Auburn, Massachusetts, and distributes beer and other products to retailers throughout eastern Massachusetts.

In May, 2012, defendant entered into a CBA with the International Brotherhood of Teamsters Local 170 Teamsters, Chauffeurs, Warehousemen and Helpers Corporation ("the Union") which was the authorized bargaining unit for plaintiff and all similarly situated employees. Teixeira served as the Union steward. The CBA covered the period from May, 2012, through May, 2017. Under Article 13 of the CBA, defendant was required to provide its employees life insurance, medical coverage and a disability plan. The CBA also effectively provided for reimbursement to the employees of the cost of their health insurance plans. Employees enrolled after May, 2007, were required to contribute no more than 20% of the total cost of their health plans and employees hired after May, 2012, were required to contribute no more than 25% of the total cost. The CBA directs that arbitration is the sole method for settling complaints with respect to alleged violations of the agreement

and that the award of the arbitrator is "final and binding on the parties".

In 2014, Quality Beverage began offering two separate health insurance plans, a basic plan and a premium plan. All Union employees were automatically enrolled in the basic plan but could choose to enroll in the premium plan. Those who remained enrolled in the basic plan were not required to pay more than the 20% or 25% contribution limits. Those who enrolled in the premium plan, however, paid an amount greater than 20% or 25% of the total cost of that plan (up to as much as 32%) and defendant did not notify those employees that their premium contributions exceeded the limits allowed under the CBA. As of May, 2017, 17 employees, including Teixeira, had switched to the premium plan and thus were contributing an amount in excess of that provided by the CBA.

In April, 2017, while negotiating a new CBA for 2017-2022, the Union's business agent discovered that Quality Beverage had been overcharging some of its employees for their monthly health insurance premiums since the fall of 2014. Shortly thereafter, Teixeira filed a grievance with Quality Beverage alleging that he and other similarly situated employees had been overcharged for their health insurance in violation of the CBA. It was estimated that the subject employees had contributed nearly $90,000 in overpayments from 2014 through 2017.

B.  **The Grievance and Arbitration**

The grievance was arbitrated in November, 2017, and in February, 2018, the Arbitrator rendered her decision and award. She determined that Quality Beverage had violated the CBA, beginning in the fall of 2014, by charging more than the premium limit and by failing to notify the Union or the employees of the excess premium under the plan.  The Arbitrator concluded, however, that the financial remedy for that violation was limited to damages incurred after eight days before the date of the filing of the grievance under the so-called "continuing violation doctrine".  Teixeira and other similarly situated employees were thus limited to recovering backpay for the period from mid-April, 2017, until the end of the CBA then in effect.

C.  **Procedural History**

In March, 2018, plaintiff filed a complaint with the Fair Labor Division of the Massachusetts Attorney General, seeking permission to file a civil lawsuit against Quality Beverage. The Attorney General granted that request.  In April, 2018, plaintiff filed a complaint in the Bristol County Superior Court pursuant to M.G.L. c. 149, §§ 148 and 150, seeking backpay covering the entire period from 2014 through May, 2017, in contravention of the Arbitrator's award.

In July, 2018, Quality Beverage removed the case to this Court on the basis of federal subject matter jurisdiction under

the LMRA. In August, 2018, defendant filed a motion to dismiss on the grounds that 1) the state law claim was preempted by Section 301 of the LMRA, 2) the complaint was untimely and 3) plaintiff lacked standing.

## II. **Motion to Dismiss**

### A. Legal Standard

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. Nollet v. Justices of Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000), aff'd, 248 F.3d 1127 (1st Cir. 2000). Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). Although a court must accept as true all of the factual allegations contained in a complaint, that doctrine is not applicable to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662 (2009).

**B. Section 301 of the LMRA**

A state law claim involving a CBA is properly removable to federal court on the basis of the doctrine of complete preemption so long as there is a colorable argument that Section 301 of the LMRA preempts that claim. Lawless v. Steward Health Care Sys., LLC, 894 F.3d 9, 18 (1st Cir. 2018). Section 301 preempts a state law claim if that claim requires the court to interpret a CBA. Id.; see also 29 U.S.C. § 185(a). Where the state law claim establishes rights and obligations independent of a labor contract, however, such that resolution of the claim requires "only consultation with . . . [but not] actual interpretation of the CBA", that claim is not preempted by Section 301. Id. (internal quotation marks omitted) (quoting Adames v. Exec. Airlines, Inc., 258 F.3d 7, 12 (1st Cir. 2001)).

If Section 301 preempts a state law claim, "that claim must either be treated as a § 301 claim or dismissed". Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985) (internal citation omitted). When the CBA calls for final and binding arbitration, the arbitrator's decision is ordinarily final and courts generally do not allow employees to challenge that decision under Section 301 unless there are "circumstances that have impugned the integrity of the arbitration process", such as fraud or an inadequate grievance procedure. Ramirez-Lebron v.

Int'l Shipping Agency, Inc., 593 F.3d 124, 131 (1st Cir. 2010) (emphasis omitted).

### C. Application

In the first instance, Teixeira's state law claim was properly removed. That wage claim is premised upon a provision in the applicable CBA whereby health insurance premiums of Quality Beverage employees were reimbursed in whole or in part. There was a colorable argument at the time of removal that the state law claim required the construction of the CBA to determine the amount of wages owed to those employees.

Finding that the matter was properly removed, the Court concludes that Teixeira's state law claim for unpaid wages is preempted by Section 301 of the LMRA. Teixeira does not contend that the Massachusetts Wage Law establishes an independent right of employees to be exempted from paying health insurance premiums above a certain limit. Rather, he alleges that he and other employees are owed back wages as a result of a violation of the CBA that sets a limit on the employees' health insurance contributions. Plaintiff's state law claim is thus dependent upon an interpretation of contractual rights under the CBA. The conclusion that Teixeira's state law claim is not independent of the labor contract is further supported by the Arbitrator's finding that Quality Beverage violated the CBA when it charged

its employees more than the premium limits.  That finding was necessarily based upon an interpretation of the CBA.

Because the Court finds that Section 301 preempts Teixeira's state law claim under M.G.L. c. 149, §§ 148 and 150, it must treat that claim in accordance with the LMRA.  The CBA contains a provision establishing that a decision of the arbitrator is final and binding and Teixeira does not claim that the integrity of the arbitration process was impugned by fraud or some other fundamental unfairness.  Plaintiff's claim is therefore precluded by the Arbitrator's final and binding decision on February, 24, 2018, and as a result that claim will be dismissed. See Ramirez-Lebron, 593 F.3d at 131 (citing 29 U.S.C. § 173(d) as evidence of the "congressional recognition that [f]inal adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing [CBA]." (alterations in original) (internal quotation marks omitted)).

## ORDER

For the foregoing reasons, defendant's motion to dismiss (Docket No. 6) is **ALLOWED**.

**So ordered.**

                                         /s/ Nathaniel M. Gorton
                                         Nathaniel M. Gorton
                                         United States District Judge

Dated January 3, 2019